Submitted January 4, resubmitted en banc June 4, affirmed July 23, petition for review allowed November 5, 2008 (345 Or 415)

Joel Terence ABBOTT,
*Plaintiff-Appellant,*

*v.*

Jacques A. DeKALB
and State of Oregon,
*Defendants-Respondents.*

Deschutes County Circuit Court
04CV0283ST; A131204

190 P3d 413

Joel Terence Abbott filed the briefs *pro se.*

Andrew C. Balyeat, Julie L. Gregory, Jeffrey T. Eager, and Balyeat & Gregory, LLP, filed the brief for respondent Jacques DeKalb.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Erin C. Lagesen, Assistant Attorney General, filed the brief for respondent State of Oregon.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

SCHUMAN, J.

Edmonds, J., dissenting.

## SCHUMAN, J.

Plaintiff brought this legal malpractice action against his trial and appellate counsel after he received post-conviction relief in the criminal case in which they had represented him. He appeals from adverse judgments, both of which were based in part on the trial court's ruling that his action was time barred because it was filed more than two years after his malpractice claim accrued. We affirm.

In the underlying criminal case, plaintiff was convicted of two counts of sexual abuse in the first degree. He appealed; this court affirmed without opinion. *State v. Abbott*, 136 Or App 547, 901 P2d 268 (1995). He then petitioned for review in the Oregon Supreme Court, and the petition was denied. *State v. Abbott*, 322 Or 362 (1995). Finally, he petitioned for *certiorari*; the United States Supreme Court denied that petition. *Abbott v. Oregon*, 517 US 1214 (1996).

Plaintiff then filed a petition for post-conviction relief, alleging that his trial counsel had provided constitutionally inadequate representation in failing to assert a statute of limitations defense and that his appellate counsel (the State Office of Public Defense Services) had been constitutionally inadequate for failing to raise that issue on appeal. The post-conviction court agreed that plaintiff's trial counsel had been inadequate and vacated plaintiff's convictions on that basis in a judgment entered on April 12, 1999.[1] The state appealed, and plaintiff "cross-appealed," advancing alternative arguments in support of the post-conviction court's judgment.[2] This court, by written opinion, affirmed the post-conviction court's judgment on December 5, 2001. *Abbott v. Baldwin*, 178 Or App 289, 36 P3d 516 (2001). The state filed no more petitions; plaintiff, however, petitioned for review in

---

[1] It is not clear from the memorandum opinion of the post-conviction court whether that court found plaintiff's appellate counsel constitutionally inadequate; even if it did, the statute of limitations would bar plaintiff's claim against his appellate counsel for the reasons stated herein.

[2] Plaintiff's "cross-appeal" was actually a cross-assignment of error because he did not seek to alter or modify the post-conviction court's judgment. *Abbott v. Baldwin*, 178 Or App 289, 291 n 1, 36 P3d 516 (2001), *rev den*, 334 Or 75, *cert den*, 537 US 901 (2002).

the Oregon Supreme Court—despite the fact that he had prevailed in this court—and, when that petition was denied, *Abbott v. Baldwin*, 334 Or 75 (2002), he petitioned for *certiorari* in the United States Supreme Court, which was also denied, *Abbott v. Baldwin*, 537 US 901 (2002). The appellate judgment issued on May 28, 2002.

Plaintiff subsequently filed this legal malpractice action against his former trial and appellate counsel on May 21, 2004. The trial court granted appellate counsel's motion for summary judgment and trial counsel's motion to dismiss, in part on the basis that plaintiff's claim was filed outside the applicable two-year statute of limitations. Although plaintiff raises numerous assignments of error, we reject all but one without discussion. The sole issue on which we write is this: At what point did the statute of limitations for plaintiff's legal malpractice claim against his former criminal defense counsel begin to run?

It is undisputed that a legal malpractice case must be filed within two years of accrual. ORS 12.010; ORS 12.110(1); *U.S. Nat'l Bank v. Davies*, 274 Or 663, 665-66, 548 P2d 966 (1976). Further, the parties agree that the analysis of legal malpractice claims against criminal defense counsel by their former clients, in particular the question of when such claims accrue, derives from *Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993). In that case, the Supreme Court held:

> "With respect to legal malpractice claims, Oregon follows the 'discovery' rule for establishing when a claim accrues. * * * The statute of limitations does not begin to run until the client knows or, in the exercise of reasonable care, should know, ' "every fact which it would be necessary for the [client] to prove * * * in order to support his right to judgment." ' *U.S. Nat'l Bank v. Davies, supra*, 274 Or at 666-67 (quoting Franks, Limitations of Actions 11 (1959)). Thus, the claim accrues and the statute of limitations begins to run when the client both suffers damage and knows or, in the exercise of reasonable care, should know that ' "the substantial damage actually suffered *was caused by*" ' the lawyer's acts or omissions. *Id.* at 670 (emphasis in original)."

In this case, as in *Stevens*, there is no question as to the duty defendants owed to plaintiff. The issue is when plaintiff knew or should have known that he was harmed. In legal malpractice cases by former criminal defendants against their criminal defense counsel, harm, again according to *Stevens*, occurs when the former defendant, now plaintiff, knows or should know that he "has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, *or otherwise*." *Id.* at 238 (emphasis added). Defendants contend that plaintiff was "exonerated * * * through post-conviction relief," and harm therefore occurred, when the post-conviction court vacated plaintiff's convictions on April 12, 1999. The statute of limitations, according to defendants, expired on April 12, 2001, and plaintiff's action, filed on May 21, 2004, was not timely. Plaintiff, however, argues that exoneration (and harm) did not occur until the appellate judgment in his post-conviction case issued from the Oregon Supreme Court on May 28, 2002; his action filed on May 21, 2004, he concludes, was therefore timely. The dissent agrees with plaintiff.

We agree that, in almost every case, a person convicted of a crime neither would nor should know of his or her exoneration until a post-conviction court's judgment issues without appeal or, if the state appeals, until the appellate judgment affirming the post-conviction court's judgment issues. As long as the state can pursue or is pursuing an appeal of the post-conviction judgment in plaintiff's favor and the possibility of reversal is real, that judgment is merely tentative and no exoneration has occurred. In this odd case, however, the state stopped pursuing its appeal in plaintiff's case after this court affirmed the post-conviction court on December 5, 2001. Thereafter, plaintiff, and not the state, petitioned for Supreme Court review and thereby delayed the issuance of an appellate judgment.

As the court held in *Stevens*, exoneration can occur not only "through reversal on direct appeal [or] through post-conviction relief proceedings," but also "otherwise." *Id.* at 238. In this case, exoneration occurred "otherwise." Exoneration occurred, and plaintiff's claim accrued, when the time within which the state could seek further review of the post-conviction court's judgment elapsed because, at that point,

his exoneration became certain. The harm attributable to defendant's negligence was thus legally cognizable 35 days after this court's decision affirming the grant of post-conviction relief on December 5, 2001, within which time the state could have filed a petition seeking review in the Supreme Court, but did not do so. *See* ORAP 9.05(2)(a) (specifying that any party seeking to obtain review of a decision of the Court of Appeals must file a petition for review in the Supreme Court within 35 days from the date of that decision). On that date—January 9, 2002—the statute of limitations under ORS 12.110(1) began to run. Plaintiff's legal malpractice claim, filed more than two years later on May 21, 2004, was filed too late.

Affirmed.

**EDMONDS, J.,** dissenting.

Plaintiff appeals after the trial court granted defendant DeKalb's motion to dismiss plaintiff's complaint under ORCP 21 A(9) and defendant State of Oregon's motion for summary judgment under ORCP 47. The initial issue framed by both motions is whether plaintiff's legal malpractice claims were brought within two years of accrual as ORS 12.010 requires. The majority reasons that, under ORS 12.010, the statute of limitations began to run on January 9, 2002, when the time expired for the state to seek review of this court's decision affirming the post-conviction relief court's judgment that petitioner received constitutionally inadequate assistance of trial counsel during his criminal proceedings. I disagree with the majority's analysis for the reasons that follow.

In general, a legal malpractice claim does not accrue for purposes of ORS 12.010 until the plaintiff knows or in the exercise of reasonable care, should know "every fact which it would be necessary * * * to prove * * * in order to support his right to judgment." *U.S. Nat'l Bank v. Davies*, 274 Or 663, 666-67, 548 P2d 966 (1976) (quoting Michael Franks, *Limitations of Actions* 11 (1959)). Until a plaintiff is deemed by the law to have been *harmed*, a "plaintiff has no claim that he could have brought against defendant and, therefore, the statute of limitations has not yet begun to run." *Stevens v. Bispham*, 316 Or 221, 228, 851 P2d 556 (1993). For purposes

of a professional malpractice claim against a criminal defense counsel, "harm" does not occur until the person has been "exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise." *Id.* at 239.

The rule of *Stevens*, as applied to this case, frames the issue of when plaintiff became "exonerated" through a post-conviction relief proceeding.[1] The majority holds that plaintiff's exoneration occurred before his post-conviction relief judgment became final. In *Stevens*, the plaintiff was exonerated, not through a post-conviction relief proceeding but when another person confessed to the crimes for which the plaintiff had been convicted, after which the trial court vacated his convictions. 316 Or at 226. Here, "exoneration" through a post-conviction relief proceeding could occur only after the post-conviction relief judgment removes the burden of the petitioner's criminal conviction from the record.[2] Until that moment in time, a successful petitioner for post-conviction relief has not been "harmed" by his counsel's malpractice, because the efficacy of the criminal conviction continues as a matter of record. The circumstances in this case illustrate that understanding.

---

[1] A plaintiff is "harmed" by a defendant's negligence when the person becomes aware of the harm or, as a reasonable person, should have been aware that there existed a probable connection between the damages resulting from that harm and defendants' negligence. *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 163-64, 742 P2d 1176 (1987). It necessarily follows that the "discovery doctrine" regarding when a reasonable person should have discovered that he or she had been harmed cannot be applied until the "harm" occurs. Because the issue in this case is when plaintiff is deemed as a matter of law to have been harmed, the discovery doctrine does not come into play.

[2] The majority reasons that "[a]s the court held in *Stevens*, exoneration can occur not only 'through reversal on direct appeal [or] through post-conviction relief proceedings,' but also 'otherwise.' In this case, exoneration occurred 'otherwise.' " 221 Or App at 343. The majority's reasoning is flawed. Exoneration did not occur by means other than by direct appeal or post-conviction relief in this case. Rather, it occurred as the result of the post-conviction relief judgment. A person is not "exonerated" from a criminal judgment until the burden imposed by the judgment is removed. *See Black's Law Dictionary* 616 (8th ed 2004) (defining exoneration, in part, as "[t]he removal of a burden, charge, responsibility, or duty"). The state's failure to seek further review of the post-conviction judgment was not the act of record that removed the burden of defendant's criminal judgment; only the Supreme Court's issuance of the appellate judgment could accomplish that act.

Plaintiff was originally convicted in Deschutes County of two counts of first-degree sexual abuse. After an unsuccessful appeal, he sought post-conviction relief in the Umatilla County Circuit Court. That court entered judgment in favor of petitioner on April 12, 1999, on his claim for post-conviction relief, ruling that plaintiff's trial counsel was ineffective for failing to argue that the prosecution of the crimes for which he was charged in Deschutes County were barred by the applicable statute of limitations. The post-conviction court also ordered that plaintiff's conviction and sentence "[is] set aside." The superintendent of the prison in which plaintiff was incarcerated at the time appealed the post-conviction judgment, and petitioner cross-appealed. This court affirmed the post-conviction court by written opinion in *Abbott v. Baldwin*, 178 Or App 289, 36 P3d 516 (2001), *rev den*, 334 Or 75, *cert den*, 537 US 901 (2002), issued on December 5, 2001. Although the superintendent did not seek review to the Oregon Supreme Court, petitioner did. Review was denied on April 16, 2002, and the appellate judgment vacating his convictions issued from the Oregon Supreme Court on May 28, 2002. Plaintiff filed this civil action on May 24, 2004—within two years from the date the appellate judgment issued from the Supreme Court.

The above facts implicate statutes that determine when the post-conviction judgment became final. Because plaintiff was "exonerated" for purposes of his civil action through a post-conviction relief proceeding, he could only be exonerated at a point in time when the post-conviction relief judgment operated to remove the burden of his underlying criminal convictions. To begin with, ORS 138.650(1) provides that either the petitioner or the defendant may appeal to the Court of Appeals within 30 days after the entry of a judgment under the Post-Conviction Hearing Act and that "[t]he manner of taking the appeal and the scope of review by the Court of Appeals and the Supreme Court shall be the same as that provided by law for appeals in criminal actions[,]" subject to exceptions not applicable here. The appeal of the post-conviction relief judgment from the trial court by the superintendent triggered the application of the provisions of ORS chapter 19, including ORS 19.450(2). That statute provides:

"As to appeals from the circuit and tax courts, the appellate judgment is effective when a copy of the appellate judgment is entered in the court's register and mailed by the State Court Administrator to the court from which the appeal was taken."

Also, ORAP 14.05(2)(a) provides that, "[t]he decision of the Supreme Court or Court of Appeals is effective * * * [w]ith respect to appeals from circuit court or Tax Court, on the date that the Administrator sends a copy of the appellate judgment to the court below."

The application of these statutes to this case means that the post-conviction relief judgment in Umatilla County did not remove the burden of the Deschutes County criminal judgment until the Umatilla County judgment became final on May 28, 2002.[3] Until that time, the criminal judgment continued to have efficacy. In sum, plaintiff's malpractice action filed on May 24, 2004, was timely filed, having been filed less than two years after his post-conviction relief judgment became final by operation of law. Thus, the majority errs when it focuses on the superintendent's failure to seek review to the Supreme Court because plaintiff's "harm" did not accrue for statute of limitation purposes under ORS 12.110 until he had been exonerated of the underlying criminal offenses. Until that time, plaintiff could not have proved that he had been harmed by his counsel's alleged malpractice, a fact necessary to support his right to judgment in his professional malpractice claim against his criminal defense counsel. Consequently, the trial court erred when it granted defendants' motions on statute of limitations grounds.

---

[3] Once the Supreme Court mandate issued in the post-conviction relief proceeding, the Umatilla County judgment in that case became final. However, ORS 138.640(2) provides that, if the court grants the petitioner relief, the judgment is not "enforceable" in the petitioner's favor until

"(a) The petitioner [in the post-conviction relief proceeding] causes a certified copy of the judgment to be entered in the circuit court in which the petitioner's conviction and sentence were rendered; and "(b) The petitioner serves a certified copy of the judgment on the district attorney of the county in which the petitioner's conviction and sentence were rendered."

The state also moved for summary judgment on the alternative ground that plaintiff's claim against his appellate criminal counsel, whom the state represents in this civil case, is barred by issue preclusion. In the trial court, the state based its motion for summary judgment, in part, on the ground that the post-conviction court ruled in its favor, and it reiterates that ground in response to plaintiff's appeal as a basis to affirm the trial court. The state explains on appeal,

"[I]n his post-conviction proceeding, the post-conviction court affirmatively *rejected* plaintiff's claim that his appellate attorney's failure to pursue the statute of limitations warranted post-conviction relief. (Rec 370; granting relief on trial counsel inadequacy claim, denying relief on all other claims for reasons stated in Superintendent's trial memorandum). Thus, the issue of whether his attorneys' negligence legally harmed plaintiff has been resolved against plaintiff, and he is precluded from re-litigating it in this proceeding."

(Footnote omitted; emphasis in original.)

The elements of the doctrine of issue preclusion are: (1) the issues in the two proceedings must be identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded had a full and fair opportunity to be heard on the issue; (4) the party sought to be precluded was a party in the prior proceeding; and (5) the prior proceeding was the type of proceeding to which courts give preclusive effect. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103-04, 862 P2d 1293 (1993). If the state is able to satisfy the elements of issue preclusion, then plaintiff is precluded from suing the state defendants for professional malpractice.

I have been unable to find any judgment of record at 370 in the circuit court post-conviction case file. However, there is a judgment of record at 37 in the file, which I assume is the judgment to which the state refers. That judgment provides that,

"based on the Court's Memorandum of Opinion dated March 26, 1999 * * *, Petitioner's Petition for Post-Conviction Relief is granted and his conviction and sentence set aside in Deschutes County Case No. 92-CR-0974-ST."

The state's brief also makes reference to the trial court's memorandum of opinion. The post-conviction court's Memorandum of Opinion of March 26, 1999, does not expressly rule on plaintiff's allegations regarding ineffective assistance of appellate counsel in his petition. The only paragraph in the Memorandum Opinion that could refer to those claims provides,

> "In reviewing the many other claims brought by Petitioner[,] besides those dealing with the statute of limitations[,] the court does not find any well taken for the reasons discussed in Defendant's Trial Memorandum which arguments are incorporated by reference."

The above circumstances lead to the following conclusions regarding the doctrine of issue preclusion. Assuming that the issue of whether appellate counsel rendered ineffective assistance to plaintiff in his criminal proceedings was actually ruled on by the post-conviction court in its memorandum opinion by its reference to the state's trial memorandum, the adjudication of that issue is not referred to, nor is it part of the operative terms of the post-conviction relief judgment. Rather, the judgment purports only to grant post-conviction relief, not to deny it. Thus, the terms of the judgment are referable only to the determination of *ineffective* assistance of trial counsel. Any ruling by the trial court rejecting the claims of plaintiff regarding ineffective assistance of appellate counsel is not included in the post-conviction relief judgment, and, moreover, could not have been essential to the judgment granting post-conviction relief. Consequentially, based on the record before us, not all of the elements of issue preclusion are satisfied.

For the above reasons, I dissent from the majority's affirmance of the trial court's rulings granting summary judgment to the State of Oregon and dismissing plaintiff's complaint as to defendant DeKalb on statute of limitation grounds.

Brewer, C. J., and Wollheim, and Rosenblum, JJ., join in this dissent.